Next matter is Jasensky v. A-Best Products Good morning. Good morning. May it please the court, I'm David Rhodes. I'm here for the appellants Karen Jasensky and her husband Anthony Jasensky. And I would like to reserve three minutes of my time for rebuttal if I may. Your Honor, in our reply brief, we mentioned that the Supreme Court had granted certiorari, in the case of Watson, against Philip Morris. And that case involved construction of federal officer removal and might shed light on some of those issues. An opinion as issued in that case is reported at 127 Supreme Court 2301. And it doesn't largely address the issues in this case, but it does shed light on at First is that the court made quite clear that the statute is to be liberally construed, contrary to what we urged in our initial brief. But I would point out that the court then went on to say that a liberal construction nonetheless can find limits in a text's language, context, history, and purposes, and proceeded to find unanimously such limits in the case before it. I think we're, I think we're particularly interested in what you pled, what was in your pleading and the causes of actions that you have maintained here, and whether, well. Just add to that why you didn't amend way back when. Your Honor, we filed a pleading under Pennsylvania procedures. In Pennsylvania, the state court has an abbreviated procedure governing asbestos claims. It's rule 1041.1 of the Pennsylvania rules of civil procedure. And under those rules, there is no device for challenging the sufficiency of a pleading. And what happened here is that no challenge to what we pled happened until the summary judgment stage. And at that point, it was not a challenge to the pleading. It was a based on facts of record. And so the pleading issues just never got raised and have been raised largely in this court as an afterthought. The magistrate judge's report and recommendation recognized that the essence of our theory was that it was a negligence premises liability case. It's true that that's not how we pled it. It was an inartful pleading, and it should have been amended if anyone ever challenged it. But the issue just never came up. And again... Well, but we, you know, if you go ahead, we, you have, you've stated certain claims in your pleading, and that would have to be the basis that the jury would evaluate your claims. So... Well, Your Honor, we would be delighted with an opportunity to amend the pleadings to conform to the evidence that's been adduced during discovery. But it was dismissed on a broader basis of an absence of duty. One other point I would like to raise from the Watson case is that the Supreme Court in that case expressly reserved the question of whether and when particular circumstances may enable private contractors to invoke the federal government officer removal statute. And it's illustrative that the case that they cited as an example of a lower court holding that under some circumstances a contractor may invoke the government officer removal is the Winters case involving production of Dow Corning's production of Agent Orange. And what makes that significant is that if the court looks at Winters, which is a case cited at 149 F. 3rd 387, that case disagreed with a decision of Judge Weinstein finding no federal jurisdiction over an Agent Orange claim under similar circumstances based on their disagreement about what the record showed with regard to who originated the decision of how to make the hazardous material. And Judge Weinstein had remanded the case because he found that the government sought only to buy ready to order herbicides. And the circuit court in Winters disagreed, saying its reading of the record reflects that the alleged deadly properties of Agent Orange resulted from the particular mixture that the government dictated. What is your argument now? What is your theory? My theory about why the lower court had no jurisdiction, Your Honor, is that there's no causal nexus between an actual government decision and what the defendant was sued for. Whatever the defendant did on which liability could possibly be predicated was based on decisions that that defendant had done. There's really two things of record that it did. It refrained from giving any warning about the hazards of asbestos to people coming onto premises. And they've admitted that the government never told them not to give a warning. And then it also specified the use of asbestos in the portion, the conventional portion of the plan. But they were carrying out the specifications for a government contract, were they not? Well, actually, no. They originated the specifications for asbestos in their own engineering department. This was based on very substantial experience they had had making dozens of power plants. Well, I guess we're going to the merits, but it can't be a product liability claim if they... It's not a product liability claim, Your Honor. We don't have a product liability claim against Duquesne Light. It's a premises claim. But where does your complaint allege a premises claim? It doesn't, Your Honor. But the child court, the district court... It's now 12 years later. Well, the district court decided this case on the basis that it was a premises claim. That was directly reflected in the report and recommendation. They said that it's a premises claim. What happened is there was generic language in the complaint. There was a carryover from other complaints and dealt with other defendants in this action that was... Well, Your Honor, it shouldn't have decided it based on a pleading deficiency without giving an opportunity to revise it. But the court looked at what was actually going on, and I think that was probably the right thing to do. Isn't it too late to amend now? No, it's never too late to amend, to conform to the evidence, especially because there had never been any challenge, never any motion to dismiss for failure to state a claim. This was always believed to be a premises claim. In fact, when the case got removed, it got removed because Duquesne Light found a discovery that... But the district court set a final judgment, though, right? Yes. And you... Erroneously, Your Honor, and it was not based on a pleading deficiency. And under the law governing the pleading that we filed, there wasn't any opportunity to challenge this deficiency. You say pleading deficiency. Why is that? Because the court did not say you failed to state a claim in your complaint, and this is a Rule 12b-6 motion. This was a Rule 56 motion. But you yourself said just a few minutes ago that you didn't make the claim. It was inartfully drafted. That's quite true, but that was not the basis for the dismissal of the action. The basis was a finding of no duty. We believe that there was no jurisdiction. It should have gone back to the state court, and in the state court, there would be no basis for challenging our pleading because Rule 1041.1 explicitly does away with those types of procedures in asbestos cases. There's a sort of streamlined procedure. The basis is that the court decided on the merits a claim that you had not yet made, but would have made if you were allowed the chance to amend, but you didn't ask for the chance to amend. Yes, Your Honor. But what happened is that the parties addressed the thing, and the court addressed the thing, all as a premises liability claim for negligence. And the technical absence of an amendment to state that claim is something that we would be very happy to clean up on remand if that's where it goes, but it doesn't warrant this court avoiding the very important issues of whether the district court had jurisdiction in the first place because it has to be shown that the conduct. Suppose one thought of this as a product case. There's been no showing by the defendant who has the burden of proof that the government dictated specifications for a product because there isn't a product at issue, but it wouldn't become removable until such time as we put on evidence of what product we were talking about and Duquesne Light was able to show reasonably precise specifications under Boyle against United Technologies to make it removable. It doesn't become removable if you don't know the basis of the claim. You should stay in the district court. Were Jasinski's claims based on Duquesne's conduct acting under a federal officer? No, Your Honor, because the federal officer did not make the decision for which Duquesne Light was sued. The federal officer in this case was essentially Admiral Rickover, right? Admiral Rickover and his subordinates. Who was famous for being a micromanager. Yes, but in fact Duquesne Light's representative specifically testified that he never had any conversation with Admiral Rickover or any other officer about thermal insulation, which is the product at issue here. What happened here is Admiral Rickover was very concerned with how the normal conventional plant would interface with the nuclear plant. This was a power plant that was a new hybrid plant. It had a Westinghouse designed and built a nuclear plant based on its experience with ships. Duquesne Light built a normal conventional plant using its ordinary off-the-shelf specifications, originated by itself. There's no evidence here that there was any oversight other than a rubber stamp. Your Honor, I believe that where the law is headed on this, the Winters case that's cited in the Watson case by the Supreme Court seems to indicate that the dividing line between what's removable and not removable is based on who made the decision to do the design feature that caused the injury. In this case, that was Duquesne Light for all the record reveals. They have no evidence that there was any input into that decision by the government other than a general policy that the government approved everything. Here, they used their standard off-the-shelf specifications and the government simply approved it. I'd like to move on for a moment to the question about the absence of a deputy. In the country, was this the first of its kind? The first, yes. You're saying that the government, under this particular person who was supervising it, Admiral Rickover, they weren't acting under him? Do you think if they did something contrary to what he wanted, it would not have jumped them? Certainly, if they had, but they didn't. There's no evidence that the decision originally was with the government. If the answer to that is certainly, then they were acting under his direction. Well, there's no causal nexus between what they did at his direction and the end result. That's the dividing line that is consistent through all the cases. I see my time is up here. Yes, we'll have you back on rebuttal. Thank you very much, Mr. Holmes. Ms. Gordon. May it please the Court, my name is Kathy Gordon, and it is my honor to represent Duquesne Light Company in this appeal. My co-appellee is David Helwig. He represents McCarles, Inc. He has asked for five minutes of time, and I will be addressing the Court with the remaining ten. Good. I think that your honors have, out of the blocks here, identified the conundrum that we have. We don't even have a cause of action pleaded against my client, Duquesne Light Company. And the Court in the Western District of Pennsylvania appeared to recognize that, but then, with all due respect, improperly inserted or created a claim for this plaintiff that had never been pled. Interestingly, in the reply brief that the appellant filed, it chastised Duquesne Light for precipitously removing the case to federal court when it didn't know what the claims were against it. And so how could it possibly know whether or not the conduct that the plaintiff was accusing Duquesne Light of, which hadn't been set forth in the complaint, in fact fell under the auspices of the government itself. So, what we are left with here is, in fact, a Rule 8 motion that was filed by Duquesne Light. It was not considered in the opinion that was issued by the District Court, but nonetheless, it was raised. We pleaded, I'm sorry, we moved for dismissal based on the fact that the plaintiff had failed to plead a cause of action against Duquesne Light Company. And, again, that argument was ostensibly rejected because the court... Did plaintiff respond to that motion? Responded by arguing that, essentially, what has been expressed here today, that everyone knew that Duquesne Light was being sued as a premises owner. We've all been operating under that assumption. And so, obviously, it's a premises liability claim that has been raised, despite the fact that the complaint is completely void of any such allegations, and, in fact, void of any allegations of failure to warn. Is there any carryover possibility because of the way that plaintiff pled under Pennsylvania pleading standards, particularly for asbestos, or does that drop out once you are in the federal court? I will attempt to refrain from being too cynical, but in looking at the reasoning behind Section or Rule 1041.1 of the Pennsylvania Rules of Civil Procedure, the rule was created because after about 10 or 15 years of asbestos litigation against manufacturers and suppliers who were the target defendants for a couple of decades, the court concluded that there were no real new allegations. And while it was still incumbent under the Rules of Civil Procedure in Pennsylvania that a plaintiff file a complaint and plead causes of action, it is absolutely true that there were very limited circumstances, and there continue to be very limited circumstances, under which a defendant can file preliminary objections. Essentially, what happens is the defendant enters an appearance, and the appearance is considered to be, by the court, a denial of all facts and raising of all affirmative defenses and an assertion of all cross-claims, and that's where we leave it. And because we have evolved to that point in asbestos litigation, there is no mechanism to challenge what is a very poorly pleaded complaint, a complaint in this case which really contains no allegations against a defendant here. Although you pretty much knew way back when this was a preeminence of premises liability case, didn't you? I mean, even their motion to remand back to state court back in the 1990s, in effect. And we recognized, yes, we acknowledged that in even our notice of removal. We are assuming that the basis for the allegations and the claims against Duquesne Light by Mr. Senske are in premises liability. And so while I still think that the court can consider the Rule 8 motion and the merits of the Rule 8 motion, let's assume for purposes of further argument on the merits of this particular case and the merits of the appeal that is before you, that what is being considered here is relationships. It's the relationship between Admiral Rickover, who has been, I think, very accurately described by Judge Ambrose as a micromanager, type A personality, and that comes out very clearly in the personal accounts of the Duquesne Light engineers who testified in this case about his involvement and his direct and pervasive authority and control over every aspect of the construction and operation of the Shipping Port Atomic Power Station. And the case is also about the relationship, or more appropriately stated, the lack of a relationship between Duquesne Light Company and Ms. Karen Desenske. And I'd like to address that particular issue. The issue is framed as this. Does Duquesne Light, as a premises owner, owe a duty to protect one who has never entered on its premises, has never come near its premises, from exposures that that person encountered in a remote location as a result of fibers taken home on the clothes of an individual who was working as a contractor at the Shipping Port Atomic Power Station? It is not even clear under the facts of record here that Mr. Shearer, Karen Desenske's father, who was a pipe fitter during the period of time that the Shipping Port Atomic Power Station was being constructed in the 1950s, was working as a subcontractor or for a subcontractor under Duquesne Light. Westinghouse was on the premises as a contractor for the government as well. Stone and Webster was on the site. There is nothing in the record that tells us who he was working for or even where in the plant he was working. Let's assume for the moment, without conceding anything, that it was foreseeable that one could leave this premises with significant exposure to asbestos. Pennsylvania Supreme Court recognizes Section 371 of the restatement, and it was foreseeable that Mr. Shearer would be leaving the premises with asbestos dust on him. Might there not be a possibility of a claim here? The Pennsylvania Supreme Court has not applied Section 371 of the restatement to impose a liability on a premises owner for these types of remote exposures. That's one answer, but what if, just my assumption would be, what if it was foreseeable that he would be leaving these premises with asbestos dust? The duty analysis under Pennsylvania law, which is very well established, is not based on foreseeability. And I agree with my counsel that there are many jurisdictions, both state and federal, who have looked at this question of take-home exposure and liability for remote exposures. How do you get around 371? Again, my assumption was, assuming that it was foreseeable, that Shearer would leave the premises with asbestos dust. If it's foreseeable, I guess what you're saying is that it's not foreseeable that someone at home would be exposed to it? Well, let me address the 371. Regardless of foreseeability, Your Honor, I would argue that that section of the restatement does not apply to this situation. Specifically, Section 371 provides that a possessor of land is subject to liability for physical harm caused to others outside the land caused by an activity carried on by him thereon, which he realizes or should realize will involve an unreasonable risk of harm, physical harm, to them. And this is important. Under the same circumstances, as though the activity were carried on in a neutral place and that is not what happened and it's not whatever happens in this type of situation, the Westerman v. Stout case, which is cited by appellant and which relies upon this particular section of the restatement, involved a situation where you have a premises owner who erects a stack relatively close to the Pennsylvania Turnpike. It knows that under certain levels of humidity that substantial steam is emitted from the stack. That, in fact, happens on a day when the plaintiff is driving her car on the Pennsylvania Turnpike and the fog causes her to lose sight of the traffic around her. She ultimately is in an accident. And clearly the cause of the accident is determined to be this fog, which was emitting from the premises. The important and distinguishing factor under a 371 analysis is that this occurred on a neutral place. The exposure to Ms. Jasensky did not occur on a neutral place. The comments for Section 371 define a neutral place as a place in which both the person who does the act and the person who sustains the bodily harm have an equal right or privilege or absence of a right or privilege to be. And the examples are a highway, a public hall, another public place. Duquesne Light had no right to be in the home of Mr. Shira and his daughter at the time that the exposures occurred, had no right to be there to do anything to prevent such exposures, and therefore I believe that the Pennsylvania Supreme Court would not apply 371 to the facts of this case. And I don't believe that the Pennsylvania Superior or Supreme Court have applied 371 to facts that are in any way remotely similar to the facts of this case. So then it gets back to your question, Judge Ambrose. If it is foreseeable, then is there not a duty owed? Well, if it's foreseeable that Shira will leave the premises with asbestos dust, perhaps there's a duty owed to Shira. The question is, is there a duty owed to anyone else who comes in contact with Shira in effect? Because Pennsylvania does not base its duty analysis on foreseeability alone, unlike some jurisdictions in the cases in which the appellant cites where a duty has been found, but rather uses a balancing test. And the balancing test, which is stated in Althaus v. Cohen and has been applied many times by the Pennsylvania courts, recognizes that the relationship of the parties is critical, along with several other factors. And there are others, and I'm prepared to address those as well, because I think under analysis, under the Althaus analysis, I think it's very, very clear that the Pennsylvania court would not find that there is even a duty owed by Duquesne Light to Mrs. Jasensky. But this balancing test is actually what created a very well-established body of premises liability law. Looking at the relationship of the parties, our Pennsylvania courts have concluded that a premises owner is only responsible for and only has duties owed to certain classes of persons, invitees, licensees, and to some extent even trespassers. And the extent of the duty and the standard of care that's imposed is actually based upon, in part, the foreseeability. So while the appellant would ask this court to focus exclusively on foreseeability and determine whether, if in fact, it was foreseeable that these fibers could be carried home to the daughter of a contractor working on his premises, then duty exists. But that's not the Pennsylvania analysis. Pennsylvania uses this balancing test, and clearly when determining the duty of a premises owner, it looks primarily at, and first and foremost at, the relationship of the parties. And it has concluded that premises owners, with only a couple of exceptions, and we addressed one of them, 371, which, again, I do not believe applies to this case. So with few exceptions, a premises owner has a duty to three categories or classes of persons. Pennsylvania courts have also held that where a party owes a duty to certain classes of persons, that duty will not extend derivatively to the family members of the classes of persons to whom the duty is owed. And that, again, is what the appellant is asking this court to do. And based upon established Pennsylvania law, it is not what the Supreme Court of Pennsylvania would do, in my opinion. I'm not sure the courts have ever been presented with a case like this one, though. And with something as toxic as asbestos fibers, and if Ms. Jasensky has mesothelioma, it's my understanding that that's only caused by asbestos fibers and not some other cause. In any event, your position, I guess, is that we would be breaking new ground if we were to go beyond what the Pennsylvania courts have said. Yes, in establishing a new duty for a premises owner. All right, good. Thank you. Thank you very much, Ms. Gordon. Mr. Helwig? May it please the court? I represent McCarles, Inc. McCarles was the employer of Ms. Jasensky's father for roughly a four-month period during 1967. Not at shipping port, but at a Babcock & Wilcox steel mill. The allegations which have been made both in the pleadings and in discovery as to McCarles are not that it was the supplier of any asbestos to which Ms. Jasensky was ultimately supplied, but rather that its workers were supplied to asbestos while they were working around others who were using it at the Babcock & Wilcox. When did you first learn that Mr. Jasensky was pursuing this type of claim against you, a general negligence claim, rather than a product liability claim? I believe that it was first raised by the appellant in their opposition to McCarles' summary judgment motion. The summary judgment motion was directed to the only claim which was fled against it, which was that it was a miner, miller, manufacturer, etc., of asbestos-containing products to which Ms. Jasensky was exposed. But McCarles and any defendant can only deal with the claims which are pled against it. Federal rules of civil procedure provide for no displeading, but there are also rules, most prominently in this case Rule 15, which plaintiffs have never invoked. And I think it behooves them to, if they want to assert a claim other than they've pleaded, that they should give the Court an opportunity to exercise its discretion to decide whether or not an amendment would be proper. In this case, there may well have been a very legitimate issue as to whether an amendment was proper, even though it's normally to be liberally allowed, because Mr. Regwanowski's affidavit was dated 1996. Based on the ages that the people were involved with, it's highly likely, if not probable, that he had already passed away at the time they might have sought any amendment and that there would have been extreme prejudice to allow an amendment at that time with respect to McCarles. Just several points I'd like to address. First off, Judge Sirica raised the question, isn't asbestos the only cause of mesothelioma? I would say that is not the case. My understanding of the medicine is that, first off, that it is not known how asbestos causes mesothelioma. There is a strong statistical correlation between asbestos exposure and patients who develop mesothelioma, but there are a number of cases, I don't recall the percentage, I want to say perhaps on the order of 15% of so-called idiopathic mesotheliomas, in which mesothelioma develops among people with no known asbestos exposure. But that's not why we're here today. It was a statement that I thought I should address. The other two points I'd like to make. The general negligence, let's assume for purposes of discussion and argument that this general negligence claim is before the court or was before the district court, which I would vehemently disagree, but assume that it was. There's no legal authority either in Pennsylvania or in any other jurisdiction to support the legal existence of such a claim against an employer which is not the premises owner. All the cases on which appellant relies involve employers who were the premises owner. McCarles was not the premises owner. It's not even alleged that it was the supplier of the asbestos to which Mr. Shira and ultimately Ms. Jasinski was exposed. Mr. Rhodes spoke about conforming the pleading to the evidence. In this case, there's no evidence to conform to that would state a cause of action as to McCarles. For one thing, I don't believe any of their expert reports that were filed in the course of discovery would support a claim of foreseeability as to McCarles. But moreover, the only evidence which was presented, which was Mr. Shira's, or rather Mr. Ray Grinnell. That affidavit, Pennsylvania law clearly indicates that that affidavit would not be competent to, that he was not competent to state whether or not the substances to which they were exposed at the Babcock and Wilcox steel mill were asbestos containing. That was mentioned, the case, the Pennsylvania Supreme Court case of Gibson versus Workers' Compensation Appeal Board was cited in my case, in my brief. That was a workers' compensation case. However, the 2007 case of Dunahee versus Lincoln Electric in the Superior Court indicated that the ruling that is a general proposition, lay witnesses were not competent to testify as to asbestos content, was recognized in that Superior Court case. So that would apply in this case. The only evidence is not competent to show that McCarles in any way was responsible for exposing Ms. Jasinski to asbestos. Thank you very much, Mr. Howell. Mr. Rhodes. Your Honor, I'd just like to point out that paragraph 10 of our complaint, which is page 295A of the reproduced record, explicitly pleads, maybe explicitly is not a good word, but does plead negligence claim against all defendants. I'd like to state on the duty question, just to put this in context, what this court is being asked to affirm as a rule of law is that even if it's foreseeable that an activity will injure people off the premises, that a premises operator is free to proceed to conduct his affairs in a way that sends people out into the world, into their homes, with poisonous substances on them, knowing that injury is likely to result and that it may do that with impunity because the law imposes no duty to act even reasonably to protect people, no duty to warn the workers that they might be injuring their families when they get home, even if it's foreseeable to the premises operator. This is a terrible rule of law that the court is urging you to find that the Pennsylvania Supreme Court would adopt if given the opportunity. But doesn't the Pennsylvania Supreme Court use the balancing test? Yes, Your Honor. In all counts, they've adopted this balancing test, but that is a test that describes not how to determine the duty in every individual case, but rather how to evaluate a proposed rule of law. And in this case, that balancing test has been done implicitly in the past in adopting section 371 of the restatement. The Supreme Court, in a case cited in our brief, adopted the equivalent first restatement provision and then the Superior Court applied the second restatement provision. Although the test for existence of duty is not solely based on foreseeability, it's a major factor, and section 371 is explicitly based on foreseeability. The test there is if he realized or should realize it will involve an unreasonable risk of physical harm, and he's subject to liability under the same conditions as if it weren't on the premises. Now, counsel for Duquesne Light has misapprehended the meaning of this part as though it's carried on at a neutral place. It doesn't require that the injury happen at a neutral place. What it does is it removes this formality of whether someone is a trespasser or invitee or licensee. It removes the special protections for a premises owner to do things on his own premises and instead says you're going to be liable if you would be liable if you did it in a neutral place where you don't have those special protections. Here, if it's foreseeable under 371, there's liability. Again, I would also like to point out that the Sinn against Berg case explicitly rejected the rationale that virtually every case rejecting a duty under these circumstances has applied, which is a specter of unlimited liability. In Sinn against Berg, the Pennsylvania Supreme Court essentially scoffed at that argument, said it does not advance the analysis and that foreseeability is an appropriate limiting factor to determine to whom someone will be liable. I see that my time is up. If there's anything else you want to tell us? Well, yes, Your Honor. I would like to point out that if you are to find that there's jurisdiction in the lower court, then you will be creating a conflict between circuits because of the joint Eastern and Southern District asbestos litigation case that's cited in our brief from the Second Circuit and not addressed by Duquesne Light. I think this court should hesitate to find that. It should send the cases back to the state court. We're confident that the state court will agree with us on the duty question. On the jurisdictional question, why do you assert that this is a failure to warn case? Well, Your Honor, that's our basic theory. That's how we win these cases. Yeah, but you don't assert that anywhere else. You've been asserting it's a negligence case. How can you have it both ways? Well, actually, Your Honor, it's the duty of the defendant to establish that there is a basis for removal. If you cannot ascertain on the basis of papers served on the defendant that there is a claim that was for conduct acting under a federal office, then it's not yet removable. And it becomes removable after further discovery or a motion to clarify the pleadings or some other thing causes there to exist a paper which first puts the defendant on notice that the case is or has become removable. So if there is an absence of pleading specificity, it means that the case wasn't removable yet and they should have done a little bit more work in the state court to clarify whether they were being sued for conduct acting under a federal officer. Notwithstanding that, and that I think is a sufficient basis to remand to state court because you evaluate the existence of federal jurisdiction on the basis of the record that existed at the time of removal, not on the basis of everything we've developed since then. But notwithstanding that, we think that the things that have been developed since then make it clear that the decisions at issue were not made by the government, and that's why there's not a causal nexus between the acting under. Certain conduct was acting under, but that's not the conduct that was being sued for. And we think that the Supreme Court is intimating in its reference to the Winters case that it would not take a good view of a rule that said that everything that you do under a federal contract allows you to remove to federal court. It has to be things where the liability was created by a government decision. Any other questions? Thank you very much, Mr. Rhodes. Thank you, Your Honor. We thank counsel for a very helpful argument. We will take the case under advisement. The next case is T.S.G. and Craig.